IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

JAMES VANCE, et al.,

                Plaintiffs,

v.                                 CIVIL ACTION NO.   2:22-cv-00593

MINGO LOGAN COAL LLC, et al.,

                Defendants.

MEMORANDUM OPINION AND ORDER

Pending before the court is a Motion for Judgment on the Pleadings filed by Defendant Arch Resources, Inc. [ECF No. 28]. Plaintiffs filed a response, [ECF No. 30], and the deadline for Defendant to file a reply has passed. For the reasons stated herein, the Motion is **DENIED**.

## I.   Background

This case arises out of a work-related injury sustained by Plaintiff James Vance at the Mountaineer II Mine in Logan County, West Virginia, on September 28, 2020. According to the Complaint, Mr. Vance was injured when a large rock fell off the boom of the continuous miner machine he was operating and struck his right foot. [ECF No. 1-1, ¶¶ 8–9]. His employer, Defendant Mingo Logan Coal, LLC ("MLC"), allegedly created and ignored "specific unsafe working conditions" that led to Mr. Vance's injury.

In September 2022, Mr. Vance and his wife, Melissa Vance, filed a Complaint in the Circuit Court of Logan County, West Virginia, asserting four claims against MLC and its parent company, Arch Resources, Inc. ("Arch"). [ECF No. 1-1]. The defendants subsequently removed the case to this court based on diversity jurisdiction. [ECF No. 1]. Counts I and II of the Complaint contain deliberate intent claims brought against MLC; Count III is a negligence claim against Arch; and Count IV is a claim by Ms. Vance for loss of consortium, which she asserts against both defendants. [ECF No. 1-1].

MLC is 100% owned by Arch Coal Operations, LLC, which in turn is owned in large part by Defendant Arch Resources, Inc. [ECF No. 1, ¶ 9]. Defendant Arch now moves for judgment on the pleadings on the sole ground that the Complaint fails to establish any duty owed by Arch to the plaintiffs, as required to sustain the negligence-based claims set forth in Counts III and IV. [ECF No. 29]. Specifically, Arch argues "that a parent/affiliated company does not owe a duty to a subsidiary's/other company's employees to provide a safe workplace." *Id.* at 1. Plaintiffs make two main arguments in response: that their allegations "at a minimum, draw a reasonable inference that Defendant Arch owed Mr. Vance a duty," and that Arch raised this issue prematurely, given the need for discovery. [ECF No. 30, at 19].

2

## II.     Legal Standard

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). In such a motion, a party may argue failure to state a claim on which relief may be granted, and the standard is the same as if the motion were brought under Rule 12(b)(6); the only difference between a Rule 12(c) motion and a Rule 12(b)(6) motion is timing. *Burbach Broad. Co. of Del. v. Elkins Radio Corp.*, 278 F.3d 402, 405–06 (4th Cir. 2002).

A motion to dismiss filed under Rule 12(b)(6) tests the legal sufficiency of a complaint or pleading. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement need not include "detailed factual allegations," but it must be "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive dismissal, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To achieve facial plausibility, the plaintiff must plead facts allowing the court to draw the reasonable inference that the defendant is liable, moving the claim beyond the realm of mere possibility. *Id.* The district court must accept as true all factual allegations contained in the complaint, however, bare "labels and conclusions" or "formulaic recitation of the elements of a cause of action" are not enough. *Id.*

3

### III.   Discussion

To succeed on a negligence claim in West Virginia, a plaintiff must prove, by a preponderance of the evidence, that the defendant owed the plaintiff a duty of care, the defendant negligently breached that duty, and the plaintiff sustained injuries proximately caused by the defendant's breach. *Webb v. Brown & Williamson Tobacco Co.*, 2 S.E.2d 898, 899 (W. Va. 1939). The instant Motion presents the sole issue of whether the facts alleged in the Complaint can establish the existence of a duty owed by Arch to Mr. Vance. *See* [ECF No. 29, at 1].

"The law presumes that two separately incorporated businesses are separate entities and that corporations are separate from their shareholders." Syl. pt. 3, *S. Elec. Supply Co. v. Raleigh Cnty. Nat'l Bank*, 320 S.E.2d 515, 516 (W. Va. 1984); *see Kubican v. The Tavern, LLC*, 752 S.E.2d 299 (W. Va. 2013) (applying to limited liability companies the principles set forth for corporations in *S. Elec. Supply Co.*). As such, a "parent-shareholder is not responsible for the working conditions of its subsidiary's employees merely on the basis of parent-subsidiary relationship." *Muniz v. Nat'l Can Corp.*, 737 F.2d 145, 148 (1st Cir. 1984) (citing *Heinrich v. Goodyear Tire & Rubber Co.*, 532 F. Supp. 1348, 1354–56 (D. Md. 1982)). Nevertheless, "a parent corporation is responsible for its own torts in the same way that any other business is." *Good v. Am. Water Works Co.*, No. 2:14-01374, 2016 WL 5402230, at *8 (S.D. W. Va. Sept. 26, 2016) (citing *United Mine Workers of Am. v. Coronado Coal Co.*, 259 U.S. 344, 395 (1922)). Accordingly, a parent company may become directly liable to

4

its subsidiary's employee when the parent becomes "'directly involved' as a participant in particular actions—either alone or in concert with the subsidiary—that raise cognizable tort claims."[1] *Sommerville v. Union Carbide Corp.*, No. 2:19-cv-00878, 2021 WL 3384967, at *1 (S.D. W. Va. Aug. 3, 2021) (quoting *United States v. Bestfoods*, 524 U.S. 51, 72 (1998)). The Supreme Court of Appeals of West Virginia has articulated the inquiry as follows:

> Activities that involve the facility but which are consistent with the parent's investor status, such as monitoring of the subsidiary's performance, supervision of the subsidiary's finance and capital budget decisions, and articulation of general policies and procedures, should not give rise to direct liability. The critical question, as it applies to direct liability of a parent corporation, is whether, in degree and

---

[1] Defendant Arch identifies a different legal standard for determining a parent company's liability. According to Arch, "[i]t is not enough to trigger liability for the parent or affiliate to merely assist the subsidiary or other company in the performance of its duty to its employees; rather, the parent or affiliate 'must intend to completely subsume or supplant the duty of the other party.'" [ECF No. 29, at 6 (quoting *Halsey v. Townsend Corp. of Ind.*, 20 F.4th 1222, 1229 (8th Cir. 2021)]. This rule stems from § 324A of the Restatement (Second) of Torts, which outlines liability for a negligent undertaking, and from the existence of an employer's absolute, nondelegable duty to provide its employees with a safe working environment. Several jurisdictions have adopted one or both of these related doctrines, but West Virginia is not among them. *Compare, e.g.*, *Halsey*, 20 F.4th at 1229 ("Under Missouri law, . . . 'one must intend to completely subsume or supplant the duty of the other party in order to incur liability for nonperformance of the duty.'" (quoting *Plank v. Union Elec. Co.*, 899 S.W.2d 129, 131 (Mo. App. 1995))), *and Heinrich*, 532 F. Supp. at 1355 (A parent company's liability "arises in the workplace setting only if the actor's undertaking was intended to be in lieu of, rather than as a supplement to, the employer's own duty of care to the employees."), *with Caudill v. EAN Holdings LLC*, No. 21-0096, 2022 WL 1223938, at *17 n.10 (W. Va. Apr. 26, 2022) (Wooten, J., concurring in part) (noting the Supreme Court of Appeals previously "recognized but did not adopt" § 324A (citing *Triad Insulation, Inc. v. Nationwide Mut. Fire Ins. Co.*, No. 12-1110, 2013 WL 3184656 (W. Va. June 24, 2013))), *and Hooper v. 1543 Country Club Manor Operations LLC*, No. 16-1226, 2018 WL 472952, at *3–4 (W. Va. Jan. 19, 2018) (holding proper standard is whether parent "was directly involved in the day-to-day operations of the facility" or was limited to "[a]ctivities that involve the facility but which are consistent with the parent's investor status" (quoting *Bestfoods*, 524 U.S. at 72)), *and Good*, 2016 WL 5402230, at *9 n.3 ("Inasmuch as the court has understood the 'direct' liability theory merely to subject a parent company to the usual rules of tort law, and inasmuch also as West Virginia courts have not suggested that they limit the 'direct' theory in some way so as to treat parent companies differently from other tortfeasors, the court will apply the well-settled rules articulated [in the] above [discussion of *Bestfoods*]."). *See generally Good*, 2016 WL 5402230, at *9 n.3 ("Here, where plaintiffs rely on state tort law, the basis of the doctrine must ultimately be state law.").

> detail, actions directed to the facility by an agent of the
> parent alone are eccentric under accepted norms of
> parental oversight of a subsidiary's facility.

*Hooper v. 1543 Country Club Manor Operations LLC*, No. 16-1226, 2018 WL 472952,

at *3 (W. Va. Jan. 19, 2018) (quoting *Bestfoods*, 524 U.S. at 72) (internal markings

omitted). Any "decisions to look beyond, inside and through corporate facades must

be made case-by-case, with particular attention to factual details." *S. Elec. Supply

Co.*, 320 S.E.2d at 523.

In this case, the Complaint mentions Defendant Arch infrequently and often

in conclusory terms. Most references "merely attempt to illustrate how [Arch] failed

to exercise reasonable care, that is, by failing to ensure adequate safety precautions

were taken" at the mine. *Richmond v. Indalex, Inc.*, 308 F. Supp. 2d 648, 663

(M.D.N.C. 2004); *see, e.g.*, [ECF No. 1-1, ¶ 34 (suggesting that Arch should have

prevented "the failure of its subsidiaries to properly train and supervise miners to

examine, inspect and test the continuous miner machines")]. Such allegations "fail to

address the threshold question of tort liability, that is, whether [Arch] even owed a

duty of reasonable care to [MLC]'s employees with respect to workplace safety."

*Richmond*, 308 F. Supp. 2d at 663. Plaintiffs do allege, however, that Arch's

"employees and/or agents monitor and inspect Defendant Mingo Logan Coal LLC and

the Mountaineer II Mine," and that Arch "was responsible for compliance of the

Mountaineer II Mine with all applicable provisions of the Federal Mine Safety and

Health Act and other applicable state and federal statutes and regulations." [ECF

No. 1-1, ¶¶ 33, 35]. These allegations, taken together, raise a reasonable inference that Arch's agents perform safety-related monitoring and inspections of the Mountaineer II Mine. Such activities represent affirmative conduct with reasonably foreseeable risks that could establish Arch's duty to MLC employees. Though the sparse allegations against Arch present a close call, I find them sufficient to survive dismissal at this stage.[2]

To be sure, depending on their object and extent, monitoring and inspection activities may fall well within "accepted norms of parental oversight of a subsidiary's facility." *Bestfoods*, 524 U.S. at 72; *see, e.g.*, *Hooper*, 2018 WL 472952, at *4 (affirming nonliability of parent company that "set policies, procedures, and budgets" for the subsidiary's facility but was not "directly involved in the day-to-day operations of the facility"). Plaintiffs' allegations could certainly be more specific and, of course, could prove entirely false. But taking them as true, and drawing all reasonable inferences in favor of the plaintiffs, the Complaint can be read to allege Arch's direct participation in ensuring workplace safety at the Mountaineer II Mine.

---

[2] In concluding that Plaintiffs' allegations move beyond "the realm of mere possibility" to state a plausible claim for relief, the court finds it significant that Arch's alleged conduct may involve "the specific aspect of safety that led to [Mr. Vance]'s injury." [ECF No. 29, at 5]. Arch is allegedly responsible for the mine's compliance with state and federal laws that address, *inter alia*, the maintenance and operation of continuous miner machines and shuttle cars, and other aspects of mine safety related to the incident at the center of this case. *See, e.g.*, W. Va. Code § 22A-2-49 (mandating particular safeguards for operating "a continuous miner or loading machine"); *id.* § 22A-2-37(o) ("[S]huttle cars, and all other haulage equipment shall be maintained in a safe operating condition."); 30 C.F.R. § 75.1403 (mandating the provision of "safeguards adequate . . . to minimize hazards with respect to transportation of men and materials"); *id.* § 75.1725(a) ("Mobile and stationary machinery and equipment shall be maintained in safe operating condition."). Moreover, these safety laws mandate that many inspections be performed each day or each shift, raising the reasonable inference that Arch exercises control over the day-to-day operations at the Mountaineer II Mine. *See, e.g.*, W. Va. Code §§ 22A-2-13, 22A-2-14, 22A-2-36; 30 C.F.R. §§ 75.1400-3, 75.1402-2.

Pleading under the Federal Rules requires only "a short and plain statement of the claim," and it is apparent that Arch is apprised of both the basic historical events relevant to the plaintiffs' claims, as well as their underlying legal theories. Fed. R. Civ. P. 8(a)(2); *see Sommerville*, 2021 WL 3384967, at *2 ("The bar that Plaintiff's allegations must rise to is not high. Accepting all of Plaintiff's allegations as true, Plaintiff must merely have alleged that [the parent company] became directly involved with the tortious conduct at issue in this case."). Moreover, as other courts have noted, determining whether a parent company exercises "control over an aspect of safety or security for its subsidiary" requires "a fact-intensive inquiry into the specific acts that the parent performed or had a right to perform." *Mack v. RPC, Inc.*, 439 F. Supp. 3d 897, 902 (E.D. Tex. 2020); *see S. Elec. Supply Co.*, 320 S.E.2d at 523. As such, the issue often is properly resolved only after the parties have conducted discovery.[3] *See, e.g.*, *Sanders v. Mapco, Inc.*, 829 F.2d 36 (4th Cir. 1987) (unpublished table decision) (explaining that district court denied parent company's motion to dismiss but granted summary judgment "[u]pon completion of discovery," when plaintiff "failed to produce sufficient evidence to establish that [parent] owed [him] a duty"); *Heinrich*, 532 F. Supp. at 1356 ("[Defendant] asserts that it owed no legal duty

---

[3] Although outside the pleadings, preliminary discovery in this case supports Plaintiffs' claim and, at a minimum, illustrates the need for additional discovery. *Compare* [ECF No. 30, at 18 ("[T]he limited written discovery provided by Defendant Arch indicates that it employs a Vice President of Safety," who "provide[s] guidance and recommendations" for the Mountaineer II Mine.)], *with Diaz v. Johnson Matthey, Inc.*, 869 F. Supp. 1155, 1167–68 (D.N.J. 1994) (denying summary judgment based on parent officers' "general recommendations regarding occupational health issues," even though the officers "had no authority to instruct that specific actions be taken at [the subsidiary]"), *and Good*, 2016 WL 5402230, at *9 (explaining that the "lifeblood" of a parent's direct liability "is a clear line from a particular tort to the conduct of the parent's officers and employees").

to plaintiff's decedent . . . . While subsequent developments in the case may establish that [defendant] is correct, I do not believe the issues can properly be determined on a motion to dismiss." (quoting *Arnstein v. Mfg. Chemists Ass'n*, 414 F. Supp. 12, 14 (E.D. Pa. 1976))); *Hooper*, 2018 WL 472952 (determining parent company's liability based on evidence presented at trial). At this time, I am satisfied, on the basis of the pleadings, that Plaintiffs "should not be precluded from attempting to prove a case." *Arnstein*, 414 F. Supp. at 15.

## IV.    Conclusion

Based on the foregoing, Defendant Arch's Motion for Judgment on the Pleadings [ECF No. 28] is **DENIED**. All four of Plaintiffs' claims remain pending, including the two asserted against Arch in Counts III and IV.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:    July 6, 2023

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE

9